# IN THE SUPREME COURT OF THE STATE OF NEVADA

EVINE D. BATTLE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68744

FILED

AUG 10 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, for burglary while in possession of a deadly weapon, first-degree kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, and carrying a concealed firearm or other deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

A GameStop store was robbed and an employee, Michelle Tyler, was restrained in the store's bathroom. Immediately after the incident, Tyler told police she would be unable to identify the culprit. Three days later, appellant Evine Battle was apprehended at a Jack in the Box restaurant after acting suspiciously. Battle was dressed similarly to the individual in the GameStop incident, and police found a concealed firearm in his sweatshirt. Four days after the GameStop incident, Tyler was shown a photo lineup and identified Battle as the culprit, although Tyler noted that she was not 100 percent sure about the identification.

Battle was indicted on three counts related to the GameStop incident, one count related to the Jack in the Box incident, and two counts related to a robbery of a 7-Eleven. While selecting a jury, Battle argued that there were only two African Americans on his 60-person venire, thus he was deprived of a jury drawn from a fair cross-section of the

16-24807

community. The district court stated on the record that there were four African Americans and concluded that Battle failed to show systematic exclusion of minorities. Battle was subsequently convicted of burglary while in possession of a deadly weapon, first-degree kidnapping with use of a deadly weapon, robbery with use of a deadly weapon, and carrying a concealed weapon. He was acquitted on the counts related to the 7-Eleven robbery. Battle appeals his convictions.

*Sufficiency of the identification evidence*

Battle argues that there was insufficient identification evidence to convict him on the three counts associated with the incident at the GameStop because Tyler initially said she could not identify the culprit. We disagree.

There is sufficient evidence for a conviction, when, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Where there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal." *Kazalyn v. State*, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992).

We recognize that there are some indications that Tyler's identification of Battle was unreliable. *See White v. State*, 112 Nev. 1261, 1265, 926 P.2d 291, 294 (1996) (Rose, J., dissenting) (recognizing that identification reliability issues may arise under stressful circumstances, when cross-race identifications occur, and when time passes between an event and an identification); *see also Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (noting that identifications may be inaccurate when the eyewitness does not have a good opportunity to "view the criminal at the time of the

crime," and an eyewitness is uncertain about identification soon after an event). Tyler was subject to a stressful event, only saw the culprit's nose, mouth, and facial hair, gave conflicting testimony regarding the facial hair, and stated that she could not identify the culprit immediately after the event. Furthermore, cross-racial identification concerns are implicated here, and, when Tyler identified Battle in the photo lineup a few days after the robbery, she could not identify him with 100 percent certainty.

However, the jury was specifically instructed on many of these identification issues. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) ("We presume that juries follow the instructions they are given . . . ."). In closing arguments, Battle stressed the importance of the jury instruction, explaining why Tyler may have misidentified Battle. Despite these issues, the jury appears to have found Tyler credible. *See McNair*, 108 Nev. at 56, 825 P.2d at 573 ("[I]t is the jury's function . . . to assess the weight of the evidence and determine the credibility of witnesses."). Furthermore, the jury was shown surveillance videos and pictures of the culprit from the GameStop incident.[1] In closing arguments, the State "implore[d the jury] to look at the similarities in the facial features" between a picture of the culprit at GameStop and Battle. The State noted that the nose, lips, chin and facial fair looked the same.

Additionally, circumstantial evidence was presented that implicates Battle in the crime. The GameStop robbery occurred within five days of the incidents at Jack in the Box and 7-Eleven. The clothing

---

[1]Battle failed to include the videos or pictures in the record on appeal. This court will not consider how clear and useful the videos and pictures were to the jury beyond what the record demonstrates.

that Battle was wearing when he was arrested at Jack in the Box was similar to what the culprit at GameStop wore, and the gun found on Battle was similar to the weapon wielded at GameStop.

Thus, we choose not to reweigh the jury's credibility determination, and, beyond Tyler's identification, there was direct and circumstantial evidence that Battle was the culprit of the GameStop crime. For these reasons, we conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair*, 108 Nev. at 56, 825 P.2d at 573 (internal quotation marks omitted).

*Jury selection issues*

Battle argues that his venire was not composed of a fair crosssection of Clark County because African Americans were underrepresented. Further, he contends that the district court erred by not conducting a hearing to determine whether there were 2 or 4 African Americans on the 60-person venire. We disagree.

"[I]t is settled that a grand jury must be drawn from a cross-section of the community, and there must be no systematic and purposeful exclusion of an identifiable class of persons." *Adler v. State*, 95 Nev. 339, 347, 594 P.2d 725, 731 (1979). "[A] prima facie violation of the fair-cross-section requirements" is demonstrated by showing

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Williams v. State*, 121 Nev. 934, 940, 125 P.3d 627, 631 (2005) (internal quotation marks and emphasis omitted).

Regardless of whether distinctive groups were underrepresented on the jury, Battle must also demonstrate a systematic exclusion. *Id.* "[A]s long as the jury selection process is designed to select jurors from a fair cross section of the community, then random variations that produce venires without a specific class of persons or with an abundance of that class are permissible." *Id.*

The district court provided the parties with a transcript from a hearing in a different case, where the jury commissioner testified about the jury selection process used in Clark County. We conclude that the process explained by the jury commissioner provides no opportunity for systematic exclusion of specific races.[2] Accordingly, because Battle failed to provide any competing evidence in the record, he has failed to make a prima facie showing under the third prong of *Williams*.

Furthermore, Battle was not entitled to a hearing as to whether there were two or four African Americans on the venire pursuant to *Afzali v. State*, 130 Nev., Adv. Op. 34, 326 P.3d 1 (2014). Battle was allowed to and did challenge the composition of the venire. Unlike *Afzali*, where the composition of a grand jury venire was a secret, this petit venire appeared before the district court and Battle. Therefore, information

---

[2]Battle also incorrectly argues that pursuant to *Williams v State*, 121 Nev. 934, 942 n.18, 125 P.3d 627, 632 n.18 (2005), a jury pool must be drawn from at least three sources. In *Williams*, this court referenced a report prepared by the Nevada Jury Improvement Commission in which it "recommended that at least three source lists be used to constitute jury pools." *Id.* This court has never created a brightline rule requiring that a jury pool be drawn from three sources.

SUPREME COURT
OF
NEVADA

(O) 1947A

about the racial composition of the venire was readily available to all the parties in the courtroom. Additionally, after looking at the venire, the district court determined on the record that there were four African Americans. This situation is unlike *Afzali*, because Battle was not "without access to information about the racial composition of the [venire] that [convicted] him." *Id.* at 3. Thus, we conclude that Battle's fair cross-section argument is without merit.

We therefore

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

cc: Hon. Douglas W. Herndon, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth Judicial District Court Clerk