# IN THE SUPREME COURT OF THE STATE OF NEVADA

TONY LEE HOBSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71419 FILED

JUN 01 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER AFFIRMING IN PART AND REVERSING IN PART

This is an appeal from a judgment of conviction, pursuant to jury verdict, of 12 counts of burglary with use of a deadly weapon, 35 counts of robbery with use of a deadly weapon, 13 counts of conspiracy to commit robbery, 2 counts of attempted robbery, 1 count of false imprisonment with use of a deadly weapon, 2 counts of kidnapping with use of a deadly weapon, 5 counts of false imprisonment, and 1 count of attempted robbery with use of a deadly weapon. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

Between October 28 and November 24, 2014, appellant Tony Hobson participated in a series of late-night robberies of fast food restaurants.[1] Some commonalities of the robberies were that two individuals wore surgical masks and commonly used a small orange-handled hatchet to gain entry into the restaurants. The individuals would force the employees to remain in the restaurant, identify the manager of the restaurants, and demand that the manager give them money from the

---

[1]While Hobson disputes the sufficiency of the evidence on several counts related to this series of robberies, he does not dispute the evidence of his involvement in the robberies generally.

18-20828

restaurants' safes at gunpoint or knifepoint. In addition to (or in lieu of) money from the safes, the individuals sometimes stole employees' phones.

On November 25, 2014, a police officer identified a vehicle parked at a Taco Bell as the suspect vehicle in the preceding robbery series. Three individuals, including Hobson, sat in the vehicle. The officer saw one individual exit the car from the rear passenger seat wearing a surgical mask and black windbreaker. After conducting a felony stop, the officer discovered surgical masks, a small orange-handled hatchet, and a gun in the trunk of the vehicle. A grand jury indicted Hobson on 82 criminal counts related to the robberies and attempted robbery, and the jury found him guilty on 71 counts. This appeal followed.

*Notice of intent to seek indictment*

Hobson argues that the district court erred in refusing to grant a pretrial habeas petition to dismiss counts 33-36 because the State failed to provide adequate notice of the April 23, 2015, grand jury hearing on those counts.

"This court reviews issues of statutory construction de novo." *Sonia F. v. Eighth Judicial Dist. Court*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009). NRS 172.241(1) provides that "[a] person whose indictment the district attorney intends to seek . . . may testify before the grand jury if the person requests to do so and executes a valid waiver in writing of the person's constitutional privilege against self-incrimination." A district attorney must serve "reasonable notice" of their intent to indict the defendant. NRS 172.241(1)-(2).[2] Notice must:

---

[2]NRS 172.241 was recently amended, however, the amendment does not affect our analysis here. *See* 2015 Nev. Stat., ch. 158, §10 at 580.

(a) [Be] given to the person, the person's attorney of record or an attorney who claims to represent the person and give[ ] the person not less than 5 judicial days to submit a request to testify to the district attorney; and

(b) Advise[ ] the person that the person may testify before the grand jury only if the person submits a written request to the district attorney and include[ ] an address where the district attorney may send a notice of the date, time and place of the scheduled proceeding of the grand jury.

NRS 172.241(2).

Here, counts 33-36 dealt with burglary and attempted robbery of a Burger King restaurant on November 17, 2014. The State served Hobson a grand jury indictment notice on December 3, 2014, far more than five days before the April 23, 2015, hearing on counts 33-36. The notice encompassed the Burger King incident, specifically providing (1) potential indictment for burglary while in possession of a deadly weapon, conspiracy to commit robbery, and "ANY OTHER CHARGES ARISING OUT OF THE INCIDENTS OCCURRING ON OR BETWEEN" dates including the date of the Burger King incident; and (2) a police event number that corresponded to the incident. Further, the notice explicitly stated that Hobson must request to testify in writing; execute a waiver of his right against self-incrimination; and submit a written request to the district attorney with an address where they may send a notice of the date, time, and place of the proceeding. Therefore, we conclude that the State abided by the requirements of NRS 172.241 in its original notice, and the district court did not err by finding adequate notice of the grand jury hearing on counts 33-36.

*Fair cross-section of the community*

Hobson claims that the district court erred by failing to strike his jury venire for lack of African American representation, as it constituted a violation of his right to a fair cross-section of the community. He further argues that this court should require jury commissioners to pull potential jurors from postal records in order to ensure a fair cross-section.

This court reviews constitutional issues de novo. *Jackson v. State*, 128 Nev. 598, 603, 291 P.3d 1274, 1277 (2012). A defendant is entitled to a jury selected from a fair cross-section of the community under the Sixth and Fourteenth Amendments of the United States Constitution. *Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 274 (1996). To establish a prima facie violation of the fair-cross-section requirement, the defendant has the burden to show:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Williams v. State*, 121 Nev. 934, 940, 125 P.3d 627, 631 (2005) (internal quotation marks and emphasis omitted).

Here, we conclude that Hobson's argument is unpersuasive. Regardless of whether a distinctive group was underrepresented, Hobson fails to demonstrate systematic exclusion. The jury commissioner testified about the method used and the two sources from which the jurors' names are selected, Nevada DMV and Nevada Energy records. Despite variation resulting in a high comparative disparity, variations are a normal part of constitutional systems. To the extent that a third source could be used for

jury selection, this court has never held that a jury pool must be drawn from three sources in order to constitute a fair cross-section of the community. Therefore, we conclude that Hobson fails to meet his burden of demonstrating a prima facie violation of the fair-cross-section requirement, and the district court did not err by refusing to dismiss the venire.[3]

*Prosecutorial misconduct*

Hobson claims that the district court erred by denying his motion for a new trial, as the State impermissibly precluded his alleged co-conspirator/getaway driver, Donte Johns, from testifying on Hobson's behalf due to a restrictive plea agreement. Hobson further argues that the district court should have allowed the defense attorney to speak with Johns in a way that would not be viewed as a violation of the plea agreement.

We review a district court's denial of a motion for a new trial for an abuse of discretion, *Maestas v. State*, 128 Nev. 124, 138, 275 P.3d 74, 76 (2012), and constitutional issues de novo, *Jackson*, 128 Nev. at 603, 291 P.3d at 1277.

This court has held that prosecutorial interference with a potential defense witness that "effectively dr[ives] that witness off the stand" violates a defendant's due process rights. *Leslie v. State*, 114 Nev. 8, 18, 952 P.2d 966, 973 (1998) (quoting *Webb v. Texas*, 409 U.S. 95, 98 (1972)); *see also Rippo v. State*, 113 Nev. 1239, 1251, 946 P.2d 1017, 1025

---

[3]Hobson also argues that the district court erred because it interpreted this issue under *Batson v. Kentucky*, 476 U.S. 79 (1986). To the extent that the district court erred in this regard, however, it is of no consequence given Hobson's failure to make a prima facie case under the correct analysis. *See Williams*, 121 Nev. at 940, 125 P.3d at 631 (determining that a district court did not violate defendant's right to a fair cross-section by failing to dismiss a venire, notwithstanding the court's failure to evaluate the argument).

(1997) ("Witness intimidation by a prosecutor can warrant a new trial if it results in a denial of the defendant's right to a fair trial."). Other courts have held that "[i]n order to demonstrate [the requisite] substantial government interference [with a witness], the defendant must show a causal connection between the governmental action and the witness' decision not to testify." *See, e.g., United States v. Anderson*, 755 F.3d 782, 792 (5th Cir. 2014) (internal quotation marks omitted).

Here, Johns' plea agreement with the State merely provided that he was to have no contact with Hobson and would cooperate with the State. Thereafter, Johns' attorney advised Johns not to meet with Hobson's attorney. However, nothing in the plea agreement forced Johns to avoid meeting with Hobson's attorney when developing his defense. Further, despite the recommendation of Johns' attorney, Hobson points to no evidence in the record showing that the State interfered with a requested meeting. Finally, while Hobson argues that the district court should have allowed him to meet with Johns and ordered that such a meeting would not be viewed as a lack of cooperation, he cites to no Nevada authority compelling courts to take such measures. Therefore, we conclude that the State did not commit prosecutorial misconduct, and the district court did not abuse its discretion in this regard.

*Sufficiency of evidence*

Hobson argues that the State presented insufficient evidence of his guilt for two counts of second-degree kidnapping with use of a deadly weapon, one count of false imprisonment with use of a deadly weapon, five counts of false imprisonment, eighteen counts of robbery with the use of a deadly weapon, one count of conspiracy to commit robbery, and one count of attempted robbery.

"[T]he test for sufficiency upon appellate review is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could be convinced to that certitude by evidence it had a right to accept." *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). Therefore, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Milton v. State*, 111 Nev. 1487, 1491, 908 P.2d 684, 686-87 (1995) (internal quotation marks omitted).

*Kidnapping and false imprisonment charges*

Hobson avers that his convictions for second-degree kidnapping and false imprisonment stemming from three restaurant robberies lacked sufficient evidence, as the required restraint for each count was incidental to the robberies.

Second-degree kidnapping is the unconsented-to detainment of another "willfully and without authority." NRS 200.310(2). Similarly, "[f]alse imprisonment . . . consists in confinement or detention without sufficient legal authority." NRS 200.460(1).

A defendant may be convicted of robbery and either kidnapping or false imprisonment arising out of the same course of events, however, the restraint necessary for kidnapping or false imprisonment "must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." *Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006) (analyzing the issue in the context of robbery and kidnapping); *see also Garcia v. State*, 121 Nev. 327, 334-35, 113 P.3d

836, 840-41 (2005) (applying similar analysis in the context of robbery and false imprisonment), *modified on other grounds by Mendoza*, 122 Nev. at 267, 130 P.3d at 181. "Whether the movement of the victim is incidental to the associated offense and whether the risk of harm is substantially increased thereby are questions of fact to be determined by the trier of fact in all but the clearest cases." *Stewart v. State*, 133 Nev., Adv. Op. 20, 393 P.3d 685, 687-88 (2017) (internal quotation marks omitted).

Here, the jury heard evidence that, in three restaurant robberies, Hobson and/or his accomplice kept employees from leaving the restaurants or held employees at gunpoint while directing the restaurant managers to open the safe. A reasonable jury could conclude either that (1) guarding the victims at gunpoint substantially increased the harm to the victims; or (2) forcing the victims to remain in, or return to, the restaurant substantially exceeded the movement necessary to complete the robberies. Because this case does not present one of the clearest cases showing jury unreasonableness, we conclude that sufficient evidence supported each of Hobson's convictions for kidnapping and false imprisonment.

*Robbery charges*

Hobson argues that there was insufficient evidence to convict him of 18 counts of robbery because the victims lacked a possessory interest in the stolen property. As to 16 counts, Hobson argues that this court should reverse convictions for robbery of fifteen employees and one of the employee's significant other where he only stole from restaurant safes and the individuals lacked access or control over that property. As to the remaining two counts, Hobson claims that this court should reverse the convictions of robbery of two employees where he only stole non-victims' cell phones.

Robbery includes "the unlawful taking of personal property . . . in the person's presence, against his or her will, by means of force or violence or fear of injury." NRS 200.380(1). "[A] thing is in the presence of a person . . . [when it] is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, *retain his possession of it.*" *Phillips*, 99 Nev. 693, 695, 669 P.2d 706, 707 (1983) (emphasis added) (internal quotation marks omitted).

Where co-employees have joint possession of company property, multiple counts of robbery can be sustained. *Klein v. State*, 105 Nev. 880, 885, 784 P.2d 970, 973 (1989) (citing *People v. Ramos*, 639 P.2d 908, 927-29 (Cal. 1982) ("conviction for two separate counts of robbery was proper where [business's] property was taken from co-employees who had joint possession of property"), *rev'd on other grounds*, 463 U.S. 992 (1983)). Moreover, an employee can be a robbery victim where they maintain "constructive possession of their employer's property," through a "special relationship with the owner of the property sufficient to demonstrate that the victim had authority or responsibility to protect the stolen property on behalf of the owner." *See People v. Scott*, 200 P.3d 837, 844 (Cal. 2009) (internal quotation marks omitted).

Here, despite not maintaining direct control of an employer's property, employees possess an implied authority to act on the employer's behalf to protect the employer's property when it is threatened by a robbery. Given the implied authority of the restaurant employees to protect employer's property, we conclude that the employees may properly be considered robbery victims through their constructive possession of the safe money, regardless of their ability to directly access it. Therefore, we affirm

those convictions. However, and as the State conceded at oral argument, we must reverse three of Hobson's robbery convictions—counts 25, 39, and 66—based on (1) a non-employee where the only property stolen was from the restaurant's safe, and (2) two employees where Hobson merely stole cell phones belonging to others. Nothing in the record demonstrates that the employee's significant other maintained possession of the restaurant's property, constructive or otherwise. Further, it is undisputed that the cell phones were not the two employees' property, nor does the record provide any evidence that they maintained any sort of possessory interest in the cell phones belonging to others. Accordingly, we conclude that insufficient evidence supported Hobson's convictions for those counts, and we reverse counts 25, 39, and 66.

*Conspiracy and attempted robbery charges*

Hobson claims that there was insufficient evidence to convict him of conspiracy or attempted robbery, as (1) Johns provided testimony that conclusively established that there was no agreement to rob the Taco Bell, and (2) Hobson made no movement toward commission of its robbery. We disagree.

"[T]o prove conspiracy to commit robbery, the State must show that [the defendant] and another agreed to take . . . property by force, fear, or threat." *Garcia v. State*, 121 Nev. 327, 343, 113 P.3d 836, 846 (2005), *holding modified on other grounds by Mendoza v. State*, 122 Nev. 267, 130 P.3d 176 (2006). To prove attempted robbery, "the prosecution must establish (1) the intent to commit the crime; (2) performance of some act towards its commission; and (3) failure to consummate its commission." *Moffett v. State*, 96 Nev. 822, 824, 618 P.2d 1223, 1224 (1980); NRS

193.330(1) ("An act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime.").

Here, Johns testified that he, Hobson, and another individual sat in the Taco Bell parking lot and considered robbing the Taco Bell. In his later testimony, however, he stated that they agreed to rob the Taco Bell after leaving a Burger King, arriving in its parking lot thereafter. Given Johns' testimony, a rational trier of fact could find that Hobson and Johns entered the necessary agreement for Hobson's conviction for conspiracy to commit the robbery. As to attempted robbery, Johns' testimony not only provided enough evidence for a reasonable trier of fact to determine that Hobson intended to rob the Taco Bell, but their arrival at the restaurant could be viewed as the performance of an act towards the commission of the robbery. This conclusion is bolstered by evidence that, like in prior robberies, the vehicle contained surgical masks, a small orange-handled hatchet, and a gun. Because the prosecution presented sufficient evidence to determine that Hobson committed conspiracy to commit robbery and attempted robbery, we affirm those convictions. Based on the foregoing, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc: Hon. William D. Kephart, District Judge
Sandra L. Stewart
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVAOA

(O) 1947A