BOONSONG JITNAN AND CHANLY THAN, APPELLANTS, *v.* RYAN JAY OLIVER, INDIVIDUALLY; CANICA JAQUES CRUSHER, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; TEREX CANICA, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; TEREX SIMPLICITY, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; AND TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN, RESPONDENTS.

No. 53225

BOONSONG JITNAN AND CHANLY THAN, APPELLANTS, *v.* RYAN JAY OLIVER, INDIVIDUALLY; CANICA JAQUES CRUSHER, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; TEREX CANICA, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; TEREX SIMPLICITY, A BUSINESS ENTITY UNKNOWN, A WHOLLY OWNED SUBSIDIARY OF TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN; AND TEREX CORPORATION, A BUSINESS ENTITY UNKNOWN, RESPONDENTS.

No. 53340

July 7, 2011                                      254 P.3d 623

*Mainor Eglet Cottle* and *Robert T. Eglet* and *Lesley B. Miller*, Las Vegas, for Appellants.

*Lewis & Roca LLP* and *Daniel F. Polsenberg, Joel D. Henriod*, and *Jacqueline A. Gilbert*, Las Vegas; *Hall Jaffe & Clayton, LLP*, and *Steven T. Jaffe* and *Ashlie Surur*, Las Vegas, for Respondents.

Before SAITTA, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, SAITTA, J.:

In these consolidated appeals, we address whether the district court abused its discretion in denying a challenge for cause to a prospective juror. We conclude that it did. We hold that when a prospective juror expresses a potentially disqualifying opinion or

bias and is inconsistent in his or her responses regarding that pre-conception upon further inquiry, the district court must set forth, on the record, the reasons for its grant or denial of the challenge for cause. We conclude that the district court erred in failing to do so. We nonetheless affirm the judgment of the district court because the case was ultimately tried by a fair and impartial jury.

## FACTS AND PROCEDURAL HISTORY

Appellant Boonsong Jitnan was operating a cab when it was struck from behind by a vehicle operated by respondent Ryan Jay Oliver. At the time, Oliver was employed by respondents Canica Jaques Crusher, Terex Canica, Terex Simplicity, and Terex Corporation (collectively, Oliver). Boonsong and his wife, appellant Chanly Than (collectively, Jitnan), instituted a personal injury action against Oliver for injuries arising out of the accident. Subsequently, the district court granted partial summary judgment on the issue of liability, determining that Oliver was the sole cause of the accident, that Oliver was negligent, and that there was no comparative negligence on the part of Jitnan. The case then proceeded to trial on the issue of damages.

At the beginning of trial, the district court asked the panel of prospective jurors whether any of them had been a party to a lawsuit. Prospective juror no. 40 responded that he was sued as a result of a car accident that he caused. The voir dire of prospective juror no. 40 proceeded as follows:

THE COURT: You understand that every case has its own particular facts?

PROSPECTIVE JUROR NO. 40: Yes.

THE COURT: Will you be able to set aside your own personal situation and listen to the evidence in this case to make your decision here if you're selected to serve?

PROSPECTIVE JUROR NO. 40: No.

THE COURT: Okay. I'm going to come back to you in a little bit on that, okay?

. . . .

. . . I told you I was going to come back to you to explore one of the issues that had come up about your own personal suit and the motor vehicle accident that you were involved in in 2005.

PROSPECTIVE JUROR NO. 40: Yes.

THE COURT: Okay. And when I asked you if you would be able to set that case aside and determine this case based on the evidence, you said no. That was what I wanted to explore with you.

PROSPECTIVE JUROR NO. 40: Okay.

THE COURT: Can you tell me why that [is]?

PROSPECTIVE JUROR NO. 40: Just between me personally being sued or actually really the insurance company, and the fact that I've also been rear-ended, and obviously not sued—or sued anybody. I just kind of have an opinion that there are a lot of frivolous lawsuits in the State of Nevada and just the advertisements on TV, et cetera, et cetera. And the fact the one that I was in when I got sued, the guy waited two years to even have the lawsuit. Plus he refused medical care on site. It's just my opinion that a lot of lawsuits are frivolous, so I feel pretty strongly about it. And that would play a part in . . . me being on the jury and my decision, so.

THE COURT: So you've kind of been in both situations—

PROSPECTIVE JUROR NO. 40: Correct. Yes.

THE COURT: —one where you were at fault in an accident and one where somebody else was at fault and involving you in an accident?

PROSPECTIVE JUROR NO. 40: Correct.

THE COURT: Do you think that all suits are frivolous?

PROSPECTIVE JUROR NO. 40: No.

THE COURT: So whether a suit is frivolous or not would depend on the evidence and the facts?

PROSPECTIVE JUROR NO. 40: Yes.

THE COURT: So would you be able to keep an open mind to listen to the facts of this case to make your decision?

PROSPECTIVE JUROR NO. 40: I want to say yes but—

THE COURT: But what?

PROSPECTIVE JUROR NO. 40: I would say no. No.

THE COURT: Okay. Let me ask you this then. Do you think maybe half of the cases are righteous and half are frivolous, or two percent are righteous and 98 percent are frivolous, or where would you put yourself?

PROSPECTIVE JUROR NO. 40: I think the insurance company pay[s] for medical bills, pay[s] to fix the car, they lost a couple days of work, took care of that, and that's all you're entitled to, period. So nothing more above and beyond that.

THE COURT: Okay. So just the—just the concrete bills or the—that can—the invoices that people have, that's what you would limit them to, is that what you're saying?

PROSPECTIVE JUROR NO. 40: Yes.

THE COURT: Okay. Does plaintiff[s'] counsel wish to ask him any questions on that?

[JITNAN'S COUNSEL]: No, Your Honor.

THE COURT: And does defendants' counsel?

[OLIVER'S COUNSEL]: If I may, Your Honor.

. . . .

If—you said you accept the concept that there are lawsuits that may be legitimate, correct?

PROSPECTIVE JUROR NO. 40: Correct. Yes.

[OLIVER'S COUNSEL]: And do you—do you accept the concept that people can be legitimately hurt in an accident?

PROSPECTIVE JUROR NO. 40: Yes.

[OLIVER'S COUNSEL]: Even in no circumstances would you have a problem with pain and suffering awards?

PROSPECTIVE JUROR NO. 40: In no circumstances?

[OLIVER'S COUNSEL]: In no circumstances if somebody was legitimately hurt.

PROSPECTIVE JUROR NO. 40: If somebody was legitimately hurt, obviously it wasn't their fault, and for some reason they couldn't work anymore, then I would say yes. I mean as far as a cash settlement of some kind, I would say they're entitled to that.

[OLIVER'S COUNSEL]: Let me—there is a dispute on these. I don't want to, you know, lead you down the wrong path.

PROSPECTIVE JUROR NO. 40: Okay.

[OLIVER'S COUNSEL]: We do have a dispute about the injuries that this accident did cause, if any—

PROSPECTIVE JUROR NO. 40: Mm-hmm.

[OLIVER'S COUNSEL]: —and I mean that's one of the reasons why we're here.

PROSPECTIVE JUROR NO. 40: Yes.

[OLIVER'S COUNSEL]: But given the fact that you do accept that there could be some lawsuits that are legitimately based, and people could legitimately be entitled to pain and suffering, would you be able to at least listen to the facts of this case to see if it fell within that arena before you made your decision, and give both sides the benefit of the doubt?

PROSPECTIVE JUROR NO. 40: Yes, I would listen to the facts, but I do have a biased opinion of it, I guess, already.

[JITNAN'S COUNSEL]: Your Honor, I have an officer outside, as far as I know, and I would ask that he be excused for cause.

[OLIVER'S COUNSEL]: Your Honor, I think the Court's just giving me an opportunity to ask some questions.

. . . .

[OLIVER'S COUNSEL]: You said you've already got certain thoughts built into your mind about this case, correct?

PROSPECTIVE JUROR NO. 40: Correct.

[OLIVER'S COUNSEL]: You haven't heard any evidence in the case, right?

PROSPECTIVE JUROR NO. 40: Correct. Yes.

[OLIVER'S COUNSEL]: If the evidence that came into the case was different from what you've built up in your mind, would you listen and fairly weigh the facts of the case and give both sides the benefit of that doubt?

PROSPECTIVE JUROR NO. 40: Yes.

. . . .

[JITNAN'S COUNSEL]: May I inquire that [sic]?

THE COURT: You may.

. . . .

[JITNAN'S COUNSEL]: And what I was hearing is, you don't believe in—much in people coming to court to recover anything more than medical bills or the time they've missed from work. Am I pretty accurate in that?

PROSPECTIVE JUROR NO. 40: Yes.

[JITNAN'S COUNSEL]: All right. And in a case where as they say they've missed time from work or the car's got damage or they have medical bills, but they want something more, you have a problem with that something more, wouldn't you?

PROSPECTIVE JUROR NO. 40: Yes.

[JITNAN'S COUNSEL]: And the reason for that is, we're all different. My dad used to say that's why they make strawberry, chocolate and vanilla ice cream, a flavor for everybody. You believe that people shouldn't get something for pain and suffering, isn't that right?

PROSPECTIVE JUROR NO. 40: Yes.

[JITNAN'S COUNSEL]: Okay. Nothing further.

THE COURT: Anything further, [Jitnan's counsel]?

[OLIVER'S COUNSEL]: But if somebody was legitimately hurt and did legitimately suffer pain, you wouldn't have any problem in those circumstances?

PROSPECTIVE JUROR NO. 40: Yes.

. . . .

THE COURT: The Court's going to deny the challenge for cause.

Following the district court's denial of the challenge for cause, Jitnan was provided with an opportunity to question the prospective juror panel. In so doing, Jitnan inquired whether the prospective jurors believed it was improper for a plaintiff to seek pain and suffering damages. Juror H, who eventually served on the jury but was just a prospective juror at the time, responded in the affirmative, stating that "there is a point you can go beyond reason," and that there is "a tendency to ask for more than is what I believe is reasonable in some cases." Also, Juror H indicated that she was unsure if she could award damages to an injured party's spouse, even if she were instructed that the spouse is entitled to receive such damages. Despite these responses, Jitnan did not challenge Juror H for cause, nor did he exercise a peremptory challenge on her. But Jitnan did exercise a peremptory challenge on prospective juror no. 40 and ultimately exhausted all of his peremptory challenges. At that time, Jitnan did not state, or even suggest, that Juror H was an unacceptable juror, nor did he inform the district

court that he would have exercised a peremptory challenge to remove Juror H if prospective juror no. 40 had been dismissed for cause. Likewise, Jitnan did not object to the seated jury. The jury ultimately awarded Jitnan $47,472 in damages. Jitnan now appeals.

## DISCUSSION

*The district court abused its discretion in denying the challenge for cause to prospective juror no. 40*

Jitnan argues that the district court abused its discretion in failing to disqualify prospective juror no. 40 for cause. He asserts that the voir dire of prospective juror no. 40 revealed a fixed bias or opinion that prevented him from performing his duties as a juror. In particular, Jitnan contends that prospective juror no. 40 was biased against plaintiffs in personal injury cases and stated a predetermined opinion that such plaintiffs are not entitled to damages for pain and suffering. He therefore argues that prospective juror no. 40 should have been dismissed for cause.[1]

A district court's ruling on a challenge for cause involves factual determinations, and therefore, the district court enjoys ''broad discretion,'' as it ''is better able to view a prospective juror's demeanor than a subsequent reviewing court.'' *Leonard v. State*, 117 Nev. 53, 67, 17 P.3d 397, 406 (2001). Among other grounds, a prospective juror may be challenged for cause for:

. . . .

(f) Having formed or expressed an unqualified opinion or belief as to the merits of the action, or the main question involved therein . . . .

(g) The existence of a state of mind in the juror evincing enmity against or bias to either party.

NRS 16.050(1).

In determining if a prospective juror should have been removed for cause, the relevant inquiry focuses on whether the '' 'juror's views ''would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'' ' '' *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125

---

[1]Jitnan also asserts that (1) the district court erred in failing to provide the jury with proof of the amount of his workers' compensation benefits; and (2) the district court abused its discretion when it required the jury to begin deliberation after a day of trial, beginning at approximately 9 p.m., just before a holiday, thereby coercing a prompt verdict. We have considered these claims and conclude that they are without merit.

(2005) (quoting *Leonard*, 117 Nev. at 65, 17 P.3d at 405 (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985))). Broadly speaking, if a prospective juror expresses a preconceived opinion or bias about the case, that juror should not be removed for cause if the record as a whole demonstrates that the prospective juror could " 'lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " *Blake v. State*, 121 Nev. 779, 795, 121 P.3d 567, 577 (2005) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). But "[d]etached language considered alone is not sufficient to establish that a juror can be fair when the juror's declaration as a whole indicates that she could not state unequivocally that a preconception would not influence her verdict." *Weber*, 121 Nev. at 581, 119 P.3d at 125.

During jury selection, prospective juror no. 40 expressed an opinion or bias against plaintiffs in personal injury cases because of his own prior experience with similar lawsuits. When asked whether he could set these opinions and impressions aside and assess the current case based on the evidence, prospective juror no. 40 responded that he could not. The juror went on to explain that he believed "a lot of lawsuits are frivolous," and that this would influence his decision. Jitnan then inquired further, seeking to rehabilitate the prospective juror. While prospective juror no. 40 retreated somewhat from his opinions, again, he fell back on his previously stated preconceptions—that many claims similar to Jitnan's were illegitimate and that plaintiffs should not be entitled to damages for pain and suffering. Probably most indicative of the fact that the prospective juror could not " 'lay aside his impression or opinion and render a verdict based on the evidence,' " *Blake*, 121 Nev. at 795, 121 P.3d at 577 (quoting *Irvin*, 366 U.S. at 723), were prospective juror no. 40's answers to the final two questions propounded during voir dire. In response to Jitnan's question, he answered that plaintiffs should not receive damages for pain and suffering, but indicated the opposite when Oliver asked the same question. Indeed, despite prospective juror no. 40's ever-changing position when questioned by counsel, the record as a whole demonstrates that the prospective juror had a fixed opinion and bias toward plaintiffs in personal injury cases and that his preconception would prevent or substantially impair the performance of his duties as a juror, given the nature of this case. We therefore conclude that the district court abused its discretion in denying the challenge for cause.

We further believe that the voir dire of prospective juror no. 40 exemplifies a situation where a district court must set forth, on the record, findings explaining the basis of its ruling. The prospective juror in this case continually gave inconsistent responses—at times he indicated that he could be fair and impartial, and at others he

reiterated his preconceived opinion and bias. Of course, we are aware that our review of a decision on a challenge for cause is deferential; however, " '[d]eferential review is not no review' " and "does not automatically mandate adherence to [the district court's] decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)). Without an explanation of the reasons or bases for a district court's decision, meaningful appellate review, even a deferential one, is hampered because we are left to mere speculation. *See, e.g., Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982 (2008) (specific on-the-record findings "enable[ ] our review of [the district court's] exercise of discretion"); *Rosky v. State*, 121 Nev. 184, 191, 111 P.3d 690, 695 (2005) (requiring findings "facilitate[s] proper appellate review" and fosters "synergy between the trial and reviewing courts [so] that appellate courts can develop a uniform body of precedent" (internal quotation omitted)); *Las Vegas Novelty v. Fernandez*, 106 Nev. 113, 119, 787 P.2d 772, 776 (1990) (requirement that a district court state reasons for permanent injunction is "intended primarily to facilitate appellate review"). Indeed, our statutory scheme embraces the notion that a decision on a challenge for cause is of a magnitude warranting findings. *See* NRS 16.060 ("Challenges for cause shall be *tried* by the [district] court," and "[t]he juror challenged and any other person may be examined as a witness on the *trial of the challenge.*" (Emphases added.)).

We are cognizant that district courts "rule on cause challenges by the minute," *United States v. Martinez-Salazar*, 528 U.S. 304, 310 (2000) (internal quotation omitted), and we do not wish to make light of that fact. We do not mean to suggest that a district court must explain the basis of its decision each time it grants or denies a challenge for cause. Rather, we hold that when a district court is faced with a situation such as the one in this case—that is, when a prospective juror expresses a potentially disqualifying opinion or bias and is then inconsistent in his or her responses regarding that preconceived opinion or bias—the district court must set forth, on the record, the reasons for its grant or denial of a challenge for cause. We believe that this will enable an appellant to understand the precise basis for the district court's decision, as well as facilitate informed review in this court. Because the district court failed to do so here, we conclude that it erred.

*Jitnan cannot demonstrate prejudicial error requiring reversal*

Jitnan contends that the district court's erroneous denial of the challenge for cause to prospective juror no. 40 requires reversal. He argues that because he was required to use a peremptory chal-

lenge to cure the district court's error, he lost one of his peremptory challenges, which he asserts was in and of itself prejudicial. Jitnan also contends that the curative use of his peremptory challenge, in removing prospective juror no. 40, was prejudicial because it prevented him from using a peremptory challenge on Juror H.

The United States Supreme Court has definitively held that the erroneous denial of a challenge for cause of a prospective juror, followed by a party's use of a peremptory challenge to remove that juror, does not deprive the party "of any rule-based or constitutional right" so long as the jury that sits is impartial. *Martinez-Salazar*, 528 U.S. at 307; *Ross v. Oklahoma*, 487 U.S. 81, 88-91 (1988). In short, "peremptory challenges are not of federal constitutional dimension." *Martinez-Salazar*, 528 U.S. at 311. We have likewise held that the curative use of a peremptory challenge does not violate a party's state constitutional rights unless he or she demonstrates actual prejudice; in other words, he or she must show that a member of the jury was unfair or partial.[2] *Blake*, 121 Nev. at 796, 121 P.3d at 578; *Weber*, 121 Nev. at 581, 119 P.3d at 125-26; *Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996). We therefore reject Jitnan's contention that the loss of one of his peremptory challenges was, in and of itself, prejudicial, requiring reversal.

Jitnan has also failed to show actual prejudice. Although Jitnan asserts that Juror H, a biased juror, was forced upon him, the record reveals otherwise. Jitnan did not challenge Juror H for cause. He never stated, or even suggested, that Juror H was an unacceptable juror, nor did he inform the district court that he would have exercised a peremptory challenge to remove Juror H if prospective juror no. 40 had been removed for cause. In fact, Jitnan did not take issue with the jury as seated. As a result, Jitnan cannot demonstrate prejudice requiring reversal. We therefore affirm the judgment of the district court.[3]

---

[2]Jitnan relies on *Burch v. Southern Pacific*, 32 Nev. 75, 105, 104 P. 225, 229 (1909), in which we suggested, in dictum, that the erroneous denial of a challenge for cause and the subsequent use of a peremptory challenge to cure that wrongful denial would amount to reversible error. While *Burch* has not been explicitly overruled, it has been abrogated by our more recent opinions. *Blake*, 121 Nev. at 796, 121 P.3d at 578; *Weber*, 121 Nev. at 581, 119 P.3d at 125-26; *Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996); *Thompson v. State*, 102 Nev. 348, 350, 721 P.2d 1290, 1291 (1986). Also, the statement is dictum and therefore "not controlling." *Argentena Consol. Mining Co. v. Jolley Urga*, 125 Nev. 527, 536, 216 P.3d 779, 785 (2009).

[3]Jitnan also appealed from the district court's order granting Oliver's motion for costs and attorney fees. Jitnan, however, makes no argument regarding the award of costs and fees. As a result, we affirm the district court's order awarding costs and fees. *See Edwards v. Emperor's Garden Rest.*, 122 Nev.

## CONCLUSION

We conclude that the record as a whole demonstrates that prospective juror no. 40 had a preconceived opinion and bias that would prevent or substantially impair the performance of his duties as a juror. We therefore determine that the district court abused its discretion in denying the challenge for cause. We hold that when a prospective juror expresses a potentially disqualifying bias or prejudice and is inconsistent in his or her responses regarding that preconception upon further inquiry, as here, the district court must set forth, on the record, the reasons for its grant or denial of the challenge for cause. We conclude that the district court erred in failing to do so. We nonetheless determine that there was no prejudicial error requiring reversal because the jury that decided Jitnan's case was fair and impartial. We therefore affirm the judgment of the district court.[4]

HARDESTY and PARRAGUIRRE, JJ., concur.

<hr>

317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (if an appellant neglects to fulfill his or her "responsibility to cogently argue, and present relevant authority, in support of his [or her] appellate concerns," this court will not consider the claims); NRAP 28(a)(8).

[4]We note that Oliver originally filed a cross-appeal in this case; however, the cross-appeal was subsequently dismissed by this court pursuant to the parties' stipulation. Despite the dismissal, Oliver, in his answering brief, asks us to revisit the district court's grant of partial summary judgment as to his negligence and Jitnan's lack of comparative negligence. Oliver, however, has not pursued his appeal from the district court's judgment or any of its orders, and therefore, we are without jurisdiction to entertain these contentions. NRAP 3A(a)-(b); *Ford v. Showboat Operating Co.*, 110 Nev. 752, 755-56, 877 P.2d 546, 548-49 (1994).