# IN THE SUPREME COURT OF THE STATE OF NEVADA

CARLOS RAFAEL ALICEA-MENDEZ,
A/K/A CARLOS ALICEAMENDEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73477

FILED

FEB 27 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of trafficking in a controlled substance and two counts of possession of a controlled substance with intent to sell. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

Plain-clothes police officers approached appellant while he was sitting at a slot machine in a Las Vegas casino. The officers asked appellant for identification, whereupon he reached for his wallet, visibly nervous. When asked by the officers why he appeared to be so nervous, appellant admitted that he had drugs and drug paraphernalia in his backpack. The officers escorted appellant to a security holding room and subsequently found heroin, methamphetamine, and other drug-related materials in appellant's possession. The State charged appellant with two counts each of trafficking in a controlled substance and possession of a controlled substance with intent to sell. A jury convicted appellant on all counts.

Appellant now challenges his convictions, arguing the district court erred in (1) denying his motion to suppress all evidence obtained during his encounter with the undercover police officers, (2) rejecting his fair-cross-section challenge without conducting an evidentiary hearing regarding the jury selection process, (3) denying one of his challenges for

19-08242

cause while granting two of the State's challenges for cause, and (4) instructing the jury. Having considered the appellant's arguments, and addressing each in turn, we conclude his convictions should be affirmed.

*Appellant's motion to suppress evidence obtained during his initial encounter with police*

"Suppression issues present mixed questions of law and fact," and this court reviews the district court's factual findings for clear error and its legal conclusions de novo. *State v. Beckman*, 129 Nev. 481, 485-86, 305 P.3d 912, 916 (2013) (internal quotation marks omitted). "[T]he United States and Nevada Constitutions both guarantee the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Id.* at 486, 305 P.3d at 916 (internal quotation marks omitted). However, "a consensual encounter is not a seizure," and does not implicate the protections afforded by the Fourth Amendment. *Id.* at 488, 305 P.3d at 918.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The *Mendenhall* court concluded that there was no Fourth Amendment violation where (1) the encounter "took place in the public concourse," (2) the law enforcement officers "wore no uniforms and displayed no weapons," (3) the officers "did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents," and (4) the officers "requested, but did not demand to see the respondent's identification." *Id.* at 555. As in *Mendenhall*, the facts in this case indicate that a reasonable person in appellant's position would have felt that he was free to leave. The record shows that the officers here approached appellant in plain clothes with no weapons displayed. The encounter took place in a

Supreme Court
OF
Nevada

(O) 1947A

2

public setting, namely, a prominent casino on the Las Vegas Strip. And the officers asked for, but did not demand, appellant's identification. There is no evidence that the officers threatened, intimidated, or otherwise coerced appellant when asking for his identification. Under these facts, a reasonable person in appellant's position would have felt free to leave.

Appellant nevertheless contends that his initial encounter constituted a seizure because (1) one of the officers identified himself as a law enforcement officer and displayed a police badge, (2) the officer asked appellant for his identification and did not inform appellant he was free to leave, (3) the officer later opined during testimony that the encounter was a *Terry*[1] stop and was not consensual, and (4) the officers were later captured on video mocking appellant's accent and purportedly admitting to racial profiling. These circumstances, however, do not demonstrate that the appellant's *initial* encounter with law enforcement constituted an unlawful seizure. "[T]hat the person asking the questions [i]s a law enforcement official" is not enough, by itself, to establish a seizure. *Mendenhall*, 446 U.S. at 555. Moreover, "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen," including "ask[ing] for identification." *United States v. Drayton*, 536 U.S. 194, 200-01 (2002). Indeed, "[e]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions [or] ask for identification" as long as "they do not induce cooperation by coercive means." *Id.* at 201. Nor is "[t]he absence of explicitly informing the person that he or she is free to leave . . . a dispositive factor" in light of the totality of the circumstances. *United*

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

*States v. Redlightning*, 624 F.3d 1090, 1103 (9th Cir. 2010). And finally, "the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that . . . intent has been conveyed to the person confronted." *State v. McKellips*, 118 Nev. 465, 470, 49 P.3d 655, 659 (2002) (internal quotation marks omitted). The record here does not indicate that the officers conveyed to appellant their suspicion that he was engaged in illegal drug activity prior to the initial encounter, and therefore, their suspicion does not factor into a Fourth Amendment analysis. To the extent the video captured officers engaging in improper conduct *after* appellant was arrested, the video is not relevant for determining whether the initial encounter with appellant was consensual.

In sum, the totality of the circumstances demonstrates that a reasonable person in appellant's position would have felt free to leave during the initial encounter with law enforcement, and there was, therefore, no unlawful seizure in violation of the Fourth Amendment. Appellant does not dispute the voluntariness of his incriminating statement to the officers during the initial encounter, nor does appellant dispute that the statement created probable cause for arrest. Accordingly, we hold the district court did not err in denying appellant's motion to suppress all evidence obtained by law enforcement before and after his arrest.

*Appellant's fair-cross-section challenge*

A criminal defendant "is entitled to a venire selected from a fair cross section of the community under the Sixth and Fourteenth Amendments of the United States Constitution." *Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005). In *Williams*, this court held that a defendant may assert a "prima facie violation of the fair-cross-section requirements" by showing

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 940, 125 P.3d at 631 (emphasis omitted) (internal quotation marks omitted).

Here, appellant invokes the third prong of the *Williams* test to argue that the district court erred by denying his request for an evidentiary hearing and his motion for a new trial, thereby denying him access to information relating to the response rates for jury summonses in Clark County among certain minority populations. Appellant contends, specifically, that the information he sought regarding response rates for jury summonses was necessary in order to show systematic exclusion of African American and Hispanic persons from the jury selection process, and that he was entitled to an evidentiary hearing on this issue. Assuming, arguendo, that appellant's theory is correct regarding low jury summons response rates among certain minority groups, it does not follow that higher incidences of failure to respond to jury summonses demonstrates a systematic exclusion of minority groups. Even if appellant had been given access to statistics regarding the number of jurors who failed to respond to jury summonses, he has provided no legal authority equating low response rates to a systematic exclusion of minority groups from the jury selection process, and there appears to be authority to the contrary. *See, e.g., United States v. Ferguson*, 863 F. Supp. 2d 661, 669-70 (E.D. Mich. 2012) (compiling cases that have rejected the notion that low response rates from minority groups amount to a problem inherent in the jury selection process, such that low response rates could be considered systematic exclusion). Absent any

supporting relevant authority for appellant's proposition, we are not persuaded that the district court abused its discretion in denying appellant's request for an evidentiary hearing or for a new trial. *Rippo v. State*, 113 Nev. 1239, 1250, 946 P.2d 1017, 1024 (1997); *see also Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

*Appellant's challenge for cause and the State's challenges for cause*

"A district court's ruling on a challenge for cause involves factual determinations, and therefore, the district court enjoys broad discretion, as it is better able to view a prospective juror's demeanor than a subsequent reviewing court." *Jitnan v. Oliver*, 127 Nev. 424, 431, 254 P.3d 623, 628 (2011) (internal quotation marks omitted). Even if a prospective juror expresses bias or a predetermined opinion, "that juror should not be removed for cause if the record as a whole demonstrates that the prospective juror could lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 432, 254 P.3d at 629 (internal quotation marks omitted). When determining whether a juror should have been removed for cause, we assess whether a prospective juror's views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001) (internal quotation marks omitted).

Appellant argues here that the district court abused its discretion in denying his challenge for cause against a prospective juror who expressed a "pro-police" sentiment and whose step-son was a deputy sheriff. The record shows, however, that when defense counsel asked the prospective juror whether he viewed the appellant as "not guilty right now," he replied in the affirmative. When the district court asked the juror



whether he would be able to follow the court's instructions "fairly" and "unbiasedly apply those instructions to the evidence admitted," the juror replied in the affirmative. Based on the record as a whole, we are not persuaded that the district court exceeded its broad discretion in concluding that the juror was capable of laying aside his opinion and rendering a verdict based on the evidence presented.

Similarly, we reject appellant's contention that the district court abused its discretion in granting two of the State's challenges for cause. The State challenged two prospective jurors who failed to unequivocally state that they would be able to fairly perform their duties as jurors. The first of the two jurors expressed an unmistakable bias in her comments that she "[did] not agree with the law that's being presented in this case 100 percent," that she was "extremely" opposed to "any laws that criminalize possession or trafficking of narcotics," and that she "wouldn't be able to set those prejudices aside to consider the evidence in this case." The second prospective juror challenged by the State expressed a bias against the appellant, and when asked by the district court about her ability to put aside her prejudice, responded, "I mean, I would try, but, I mean, to me [appellant has] been charged for a reason." While it is unclear why appellant would seek to rehabilitate a juror who clearly expressed a bias against him, we nevertheless hold that, in light of the juror's statements on the record, the district court did not abuse its discretion in granting the State's challenges for cause. The district court had ample reason to conclude the challenged jurors expressly demonstrated that their views "would prevent or substantially impair the performance of [their] duties as a juror." *Leonard*, 117 Nev. at 65, 17 P.3d at 405 (internal quotation marks omitted). We are, therefore, not persuaded that the district court abused its discretion in granting the State's challenges for cause.

*The trial court's jury instructions*

Finally, appellant challenges the district court's rejection of appellant's proposed jury instructions on the definition of reasonable doubt. Appellant concedes, however, that his proposed jury instruction was "not required," but merely "permissible." Moreover, the district court instructed the jury with the statutory definition of reasonable doubt, a definition for which no variation is permitted by statute. *See* NRS 175.211(2). We thus reject appellant's argument that the district court abused its discretion in rejecting his proposed jury instructions. *See Rose v. State*, 127 Nev. 494, 500, 255 P.3d 291, 295 (2011) ("The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." (internal quotation marks omitted)).

Accordingly, we ORDER the judgment of conviction AFFIRMED.

_____ , J.
Pickering

_____ , J.
Parraguirre

_____ , J.
Cadish

cc:     Hon. Eric Johnson, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk