IN THE SUPREME COURT OF THE STATE OF NEVADA

TERRELL TORRY TAYLOR,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 75447

FILED

DEC 16 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree kidnapping of a vulnerable person, two counts of sexual assault of a vulnerable person, and one count of attempted sexual assault of a vulnerable person.[1] Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge. Appellant Terrell Taylor raises eight contentions on appeal.

Taylor first argues that the district court erred in denying his *Batson*[2] challenge. "The United States Constitution prohibits parties from exercising peremptory challenges to exclude jurors on the basis of race." *Williams v. State*, 134 Nev. 687, 688, 429 P.3d 301, 305 (2018). Such claims require the district court to conduct a three-step inquiry and we give "great deference" to the district court's findings and only review them for clear error. *Id.* at 687-89, 429 P.3d at 305-06.

Only the second and third steps in the *Batson* analysis are relevant here because the State interjected its reasons for the peremptory

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986)

challenge without the district court first determining whether Taylor made a prima facie showing of discrimination. *See Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006) (finding the first step of the *Batson* analysis moot under similar circumstances). The State met its burden at the second step, offering a race-neutral explanation for its challenge—the prospective juror's aversion toward law enforcement as expressed through both words and demeanor. *See Williams*, 134 Nev. at 691, 429 P.3d at 307. We do not agree that the State's use of the term "racial divide" shows a discriminatory basis for the peremptory challenge; rather, our review of the record shows that the State was merely paraphrasing the challenged veniremember's voir dire answers. *See Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991))). And we perceive no clear error in the district court's decision on the third step that Taylor failed to prove purposeful discrimination, particularly when no other veniremember espoused related views or displayed similar demeanor, Taylor did not dispute the State's rendition of the challenged veniremember's demeanor, and the challenged veniremember said that she would hold her views regarding police brutality against the police. *See McCarty v. State*, 132 Nev. 218, 226-27, 371 P.3d 1002, 1007-08 (2016) (discussing the considerations that may be relevant in determining whether the defendant has proven purposeful discrimination). Although the court did not make an explicit record of its findings despite our repeated instructions to do so, *see Williams*, 134 Nev. at 689, 429 P.3d at 306 ("We have repeatedly implored district courts to . . . clearly spell out their reasoning and determinations [when ruling on *Batson* challenges]."), the

record in this case supports the district court's determination such that reversal is not warranted, *see Kaczmarek*, 120 Nev. at 334, 91 P.3d at 30 (affirming a district court's *Batson* decision from a review of the record despite the district court's failure to make explicit findings).

Second, Taylor argues that insufficient evidence supported his convictions.[3] When reviewing a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Taylor first asserts that there is insufficient evidence to support convictions for both kidnapping and sexual assault. We disagree. Evidence supporting the conviction for first-degree kidnapping includes that the victim voluntarily entered Taylor's vehicle under the guise that he would drive her to UNLV, but that, instead, Taylor drove elsewhere for the purpose of sexually assaulting the victim. *See* NRS 200.310(1) (defining first-degree kidnapping); *Pascua v. State*, 122 Nev. 1001, 1006, 145 P.3d 1031, 1034 (2006) (explaining that dual convictions for kidnapping and another crime can stand where movement of the victim substantially

---

[3]Within this argument, Taylor challenges the admission of the victim's in-court identification of Taylor because she was not able to identify him in a previous photographic line-up. We find no plain error in the admission of this evidence because, after the crime, the victim provided specific physical details about the perpetrator sufficient to make her in-court identification reliable. *See Taylor v. State*, 132 Nev. 309, 322, 371 P.3d 1036, 1045 (2016) (concluding that a witness's face-to-face observation for "some time" of the suspect in her home was a sufficient independent basis for her in-court identification); *see also Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (reviewing unobjected-to errors for plain error).

exceeds that which is required to complete the associated crime); *Hutchins v. State*, 110 Nev. 103, 108-09, 867 P.2d 1136, 1139-40 (1994) (affirming dual convictions for first-degree kidnapping and sexual assault). And the victim's testimony and evidence that a vaginal swab taken from the victim included Taylor's sperm supports the sexual assault conviction. *See* NRS 200.366 (defining sexual assault). Thus, a rational trier of fact could find that Taylor committed these crimes. Similarly, a rational trier of fact could find the victim to be a vulnerable person because she was deaf and only communicated though sign language, and the State's expert testified that this "restrict[ed] the ability of [the victim] to perform the normal activities of daily living," such as communicating and socially interacting. NRS 200.5092(8)(b) (defining "vulnerable person").

Third, Taylor argues that the district court erred in admitting pictures of his tattoos, the victim's 911 call, the companion CAD log, and testimony from the State's vulnerable-person expert. We conclude the district court did not abuse its discretion because the pictures' probative value to identifying Taylor as the perpetrator and size-comparison to the victim outweighed any unfair prejudice; the 911 call[4] and CAD log fell

---

[4]We reject Taylor's argument that the 911 call constituted inadmissible hearsay merely because the victim's message had to be translated to the 911 dispatcher due to the victim's deafness since the translation was not offered for the truth of the matter asserted, but rather to show the interpreter's understanding of what the victim said. *See* NRS 51.035 (defining hearsay); *see also Orengo v. State*, 793 S.E.2d 466, 477 & n.46 (Ga. Ct. App. 2016) ("In the absence of any evidence of any inaccuracy or motive to mislead or distort by the interpreter, we reject [the defendant's] contention that because the police officers communicated with [the victim] through a sign language interpreter, their testimony about her statements

within hearsay exceptions or exemptions; and the State's expert's testimony was relevant to aid the jury in determining if the victim was a vulnerable person.[5] *See Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009) (reviewing a district court's decision to admit or exclude evidence for an abuse of discretion); *see also* NRS 48.025 (providing for relevant evidence's admissibility); NRS 48.035(1) (providing that relevant evidence is not admissible when its "probative value is substantially outweighed by the danger of unfair prejudice"); NRS 51.035 (defining hearsay); NRS 51.095 (providing the excited utterance exception to the hearsay rule); NRS 50.275 (explaining when an expert may testify).

Fourth, Taylor argues that the district court plainly erred in enhancing his attempted sexual assault sentence with the vulnerable person enhancement. We agree as the plain language of NRS 193.167 does not allow for attempted sexual assault to be enhanced. *See Rodriguez v. State*, 134 Nev. 780, 781, 431 P.3d 45, 46 (2018) (reviewing unpreserved sentencing enhancement arguments for plain error); *State v. Hancock*, 114 Nev. 161, 166, 955 P.2d 183, 186 (1998) (concluding that an enhancement was "inappropriately tacked on" because the underlying substantive charge

---

to them constituted inadmissible hearsay."), *overruled on other grounds by White v. State*, 823 S.E.2d 794 (Ga. Ct. App. 2019).

[5]For the same reason, we reject Taylor's argument that he was entitled to have the vulnerable person enhancement stricken and/or an advisory instruction to acquit due to a lack of admissible evidence and/or insufficient evidence. *See Middleton v. State*, 114 Nev. 1089, 1105-06, 968 P.2d 296, 307-08 (1998) (recognizing that granting an advisory instruction to acquit is within the district court's discretion and is proper where there is insufficient evidence to convict the defendant of the charged crime).

 

was not listed in NRS 193.167). Therefore, we reverse the consecutive 36-96 month sentence imposed for count 5.[6]

Fifth, Taylor argues that the district court erred in refusing to give his requested jury instructions. Specifically, Taylor takes issue with the district court not giving his proposed identification instruction because it was related to his theory of the case; inverse element instructions because they were valid reminders that the jury could not return convictions if proof of a particular element was lacking; and lesser-included-offense instructions because they were accurate and relevant. As to the lesser-included-offense instructions, we conclude that the district court neither abused its discretion nor committed error in refusing those instructions because the evidence did not support convictions for the lesser-included offenses. *See Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (specifying the standard of review for jury instructions and explaining that a district court abuses its discretion if its "decision is arbitrary or capricious or if it exceeds the bounds of law or reason" (internal quotation marks omitted)); *Rosas v. State*, 122 Nev. 1258, 1265, 147 P.3d 1101, 1106 (2006) (reiterating that the district court can refuse a lesser-included-offense instruction when not supported by trial evidence and the State met its burden of proof on the greater offense), *abrogated on other grounds by Alotaibi v. State*, 133 Nev. 650, 404 P.3d 761 (2017).

---

[6]We reject the State's harmless-error argument because the additional consecutive sentence is not authorized by NRS 193.167. *See Kazalyn v. State*, 108 Nev. 67, 76, 825 P.2d 578, 584 (1992) (vacating a sentence imposed for an enhancement not supported by the Legislature's clear contemplation), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000).

The record shows that after neither the State nor Taylor objected to the court's proposed instructions, Taylor proposed several additional instructions, to which the State generally objected but offered no basis for the objection. Thereafter, the district court neither gave Taylor's proposed instructions nor stated the basis for rejecting them.[7] The three proposed instructions Taylor supported with cites to *Crawford* cannot be categorized as inverse-element instructions because they did not specify which "particular element [was] lacking." 121 Nev. at 753, 121 P.3d at 588. Furthermore, the instructions the court actually gave were legally correct and substantially covered Taylor's proposed instructions on the State's burden of proof and Taylor does not argue that the given instructions were inaccurate statements of law. *See Davis v. State*, 130 Nev. 136, 145, 321 P.3d 867, 874 (2014) (holding that a district court may refuse a jury instruction where the proposed instruction is substantially covered by other instructions); *Leonard v. State*, 114 Nev. 1196, 1208, 969 P.2d 288, 296 (1998) (holding that the district court did not abuse its discretion in giving a jury instruction that was a correct statement of the law). And we conclude that any error would have nevertheless been harmless as the jury was accurately instructed and substantial evidence supported the jury's verdict.

---

[7]We remind the district court that if it "believes that the [proposed instruction] is pertinent and an accurate statement of the law, whether or not the charge has been adopted as a model jury instruction, it must be given." NRS 175.161(3). We also remind the district court that making a thorough record when rejecting a proposed jury instruction is of special importance because appellate review is hampered by a lack of express findings. *See Boonsong Jitnan v. Oliver*, 127 Nev. 424, 433, 254 P.3d 623, 629 (2011) (reviewing a district court's decision regarding a challenge to a juror for cause and stating that "[w]ithout an explanation of the reasons or bases for a district court's decision, meaningful appellate review, even a deferential one, is hampered because we are left to mere speculation").

SUPREME COURT
OF
NEVADA

(O) 1947A

*See Guitron v. State*, 131 Nev. 215, 230-31, 350 P.3d 93, 102-03 (Ct. App. 2015) (holding the district court's failure to give an inverse elements instruction was harmless where the jury was correctly instructed on the elements of the crime and substantial evidence supported the verdict). Accordingly, we conclude reversal is not warranted on this issue.

Sixth, Taylor argues that the district court erred in responding to jury questions and issues that arose during deliberations. During deliberations, the jury foreman sent two separate questions to the district court asking what options were available to fill out the verdict form if the jurors did not vote unanimously. Another juror submitted a note stating that there was a deadlock on one count and asking which verdict to "write down" under that scenario. The district court did not plainly err by referring the jury to the instructions on unanimity and considering charges separately and refusing to answer a non-foreperson question that did not relate to a significant element of the charged crimes. *See Martinorellan v. State*, 131 Nev. 43, 48, 343 P.3d 590, 593 (2015) (holding that this court reviews both unpreserved constitutional and nonconstitutional errors for plain error); *see also Gonzalez v. State*, 131 Nev. 991, 997, 366 P.3d 680, 684 (2015) (holding that when a jury question connotes "confusion or a lack of understanding" of a significant element of the charged crime the district court must not refuse to answer the question, but can, however, refuse to answer other jury questions); *Scott v. State*, 92 Nev. 552, 555, 554 P.2d 735, 737 (1976) (providing that no error lies when a district court refuses to answer a deliberating jury's questions when the district court already fully and properly instructed the jury on the questioned issue).

The district court received a fourth question from the foreman asking to replace a juror who was "refus[ing] to compromise or prove their

argument and only believes that the judge can determine a verdict." Before the judge could respond, a juror ran out of the deliberation room seeking assistance. While the fleeing juror remained separate from the other jurors, the district court discussed the issue with the parties and jury foreman. We conclude that the district court did not err in its handling of the situation and allowing the jury to continue deliberations. The record shows that the district court spoke to the foreman to ensure that the deliberations had not, and would not, include violence, threats of violence, or anything "physically menacing" and that deliberations would only occur when all jurors were present; that the fleeing juror wanted to rejoin deliberations; and that the district court made a court marshal available outside the jury room for any needed assistance. *See Eden v. State*, 109 Nev. 929, 930-31, 860 P.2d 169, 170 (1993) (concluding that a district court was not unduly coercive by questioning a dissenting juror outside the presence of other jurors about following the jury instructions); *see also United States v. Zabriskie*, 415 F.3d 1139, 1147 (10th Cir. 2005) (finding no error with the trial judge's decision to initiate an investigation where several notes from the jury indicated one juror's refusal to deliberate and where the judge thereafter interviewed the juror and "properly kept counsel appraised of her actions, afforded counsel an opportunity for input and objection and kept a verbatim record"). Furthermore, the judge's comments to the foreman were not verdict-related, but rather emphasized acceptable behavior during deliberations and the court's additional instructions reiterated verdict-unanimity, allowing for no verdict upon lack of agreement. That the jury returned guilty verdicts shortly after deliberations resumed does not change our conclusion, especially because the jury found Taylor not guilty on one count. *See Lowenfield v. Phelps*, 484 U.S. 231, 234-241 (1988) (finding no judicial

coercion where a deliberating jury's note suggested deadlock, the court instructed the jury to keep deliberating with an open mind, and the jury returned a verdict thirty minutes later). And it is of no moment that the deliberations here were heated and confrontational. *See People v. Vigil*, 718 P.2d 496, 502 (Colo. 1986) (finding that "[h]eated argument, even shouting, may be a normal part of the deliberative process of a jury"). Because the court did not err, this argument does not provide a basis for reversal.[8]

Further, Taylor's contention that the district court violated NRS 175.451[9] by not bringing the full jury into the courtroom each time the jury posed a question or the court addressed jury issues lacks merit because

---

[8]We also reject Taylor's argument that the court's responses amounted to an improper *Allen v. United States*, 164 U.S. 492 (1896), instruction as the responses reiterated instructions already given, reminded the foreman that deliberations must be controlled and respectful, and did not mandate the jury to reach a verdict. *See Farmer v. State*, 95 Nev. 849, 853-54, 603 P.2d 700, 703 (1979) (providing that "[a]n *Allen* . . . charge is an instruction to a deadlocked jury which contains an admonition that the case must at some time be decided or that minority jurors should reconsider their positions in light of the majority view" and concluding that having the jury continue its deliberations after asking questions is not inappropriate or coercive and does not amount to an *Allen* instruction where the court's responses do not explicitly or implicitly compel the jury to reach a verdict).

[9]NRS 175.451 provides:

> After the jury have retired for deliberation, if there is any disagreement between them as to any part of the testimony, or if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required shall be given in the presence of, or after notice to, the district attorney and the defendant or the defendant's counsel.

"the jurors were not requesting information regarding testimony or any point of law." *Farmer v. State*, 95 Nev. 849, 854, 603 P.2d 700, 703 (1979). Similarly, Taylor's contention that an *Allen* charge was required due to a jury deadlock fails as the jury communications did not definitively connote a deadlock. *See id.* at 853, 603 P.2d at 703 (explaining that an *Allen* charge is given to a deadlocked jury).

Seventh, Taylor argues that we should reverse the judgment of conviction based on cumulative error. The error related to the vulnerable person enhancement affected only the enhancement sentence on the attempted sexual assault charge, and we have cured that error by reversing the enhancement sentence. As that was the only identified error, Taylor's cumulative error claim does not present a basis for reversal. *See Burnside v. State*, 131 Nev. 371, 407, 352 P.3d 627, 651 (2015) (holding that in order for a cumulative error claim to succeed, the defendant must demonstrate more than one error).

Eighth, Taylor argues that the district court abused its discretion by considering the State's statement that Taylor was "disruptive" during trial as a basis for sentencing him to consecutive life sentences, when the Division of Parole and Probation (Division) recommended a lesser sentence. Considering the district court's wide discretion in sentencing, *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009), and that Taylor's sentences were all within the prescribed statutory range for his convictions, *see* NRS 193.330 (attempt penalties); NRS 193.167 (additional penalty for crimes against vulnerable persons); NRS 200.320 (first-degree kidnapping penalties); NRS 200.366 (sexual assault penalties), we find no abuse of discretion. And there is no evidence that the district court relied on impalpable or highly suspect evidence. *See Smith v. State*, 112 Nev. 871,

SUPREME COURT
OF
NEVADA

(O) 1947A

11

873, 920 P.2d 1002, 1003 (1996) (providing that this court may disturb a sentence within statutory limits only if district court relied on "highly suspect or impalpable information"). Rather, the record shows that the district court made its sentencing decision after considering arguments by counsel (both of which included comments on Taylor's behavior during the course of the case), Taylor's statement, letters from Taylor's family members, and the Division's report. *See Collins v. State*, 88 Nev. 168, 171, 494 P.2d 956, 957 (1972) (concluding that the district court does not abuse its discretion by imposing a sentence in excess of that suggested by the Division, as there is no requirement to set the penalty in compliance with the Division's recommendations).

Based on the foregoing, we

ORDER the judgment of the district court AFFIRMED IN PART, REVERSED IN PART, AND REMAND this matter to the district court for proceedings consistent with this order.[10]

_____, C.J.
Gibbons

_____, J.
Cadish

_____, Sr. J.
Douglas

---

[10]The Honorable Michael Douglas, Senior Justice, participated in the decision of this matter under a general order of assignment.

Supreme Court
OF
Nevada

(O) 1947A

cc:    Hon. Michelle Leavitt, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk